IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARCUS ANTONIO SATTERFIELD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:23CV143 |
| POLICE OFFICER J.F. SEIFERT (now Detective) and ROXBORO POLICE DEPARTMENT, | ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on 20 motions. Plaintiff has filed 19 motions with the Court, which the undersigned has categorized as (1) service-related motions (Docket Entries 19, 30, 31, 32, 34, 37); (2) motions to amend (Docket Entries 42, 52); (3) discovery motions (Docket Entries 25, 28, 43); (4) summary judgment motions (Docket Entries 18, 38, 39); (4) a motion for a more definite statement (Docket Entry 40); and (5) four indeterminate motions (Docket Entries 20, 29, 33, 50). Defendants, Officer J.F. Seifert ("Defendant Seifert") and the Roxboro Police Department ("RPD") (collectively "Defendants") have filed a Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). (Docket Entry 15.) For the reasons stated below, the undersigned recommends granting in part and denying in part Defendants' Motion to Dismiss (Docket Entry 15); granting Plaintiff's service-related motions (Docket Entries 19, 30, 31, 32, 34, 37); denying Plaintiff's motions to amend (Docket Entries 42, 52); denying Plaintiff's discovery motions (Docket Entries 25, 28, 43); denying Plaintiffs summary judgment motions (Docket Entries 18, 38, 39); denying Plaintiff's motion for a more

1

definite statement (Docket Entry 40); and denying the remaining indeterminate motions (Docket Entries 20, 29, 33, 50).

I. Background

In February 2023, Plaintiff Marcus Satterfield ("Plaintiff"), a pro se inmate, filed an application to proceed in forma pauperis ("IFP") and a Complaint. (Docket Entries 1, 2.) The Court granted Plaintiff IFP status and ordered the Clerk to send Plaintiff a summons for each defendant. (Docket Entry 4.) Thereafter, a summons was issued to Defendant Seifert and the RPD. (Docket Entries 5, 11.) Both sets of summonses and complaints were sent to the RPD's address, signed for by RPD records clerk Brittany Satterfield, and returned executed. (*See* Docket Entries 5, 11, 15-2, 45, 46.)

In his Complaint, Plaintiff claims multiple constitutional violations, including "illegal arrest," "illegal handcuffing," and "failure to properly go by legal procedures." (Docket Entry 2 at 3.)[1] The Complaint lacks significant detail surrounding the alleged incident that precipitated the constitutional violations. However, Plaintiff does state that while he was inside another person's home, Defendant Seifert "slammed me while I was hand cuffed."[2] (*Id.* at 4.) Once he arrived at "The Sherriff Detention Center," he claims he was made to "crawl and beg to lo[o]sen the cuffs," called "boy" several times, and was again "slammed" by Defendant Seifert. (*Id.*) He also claims that he was arrested without a warrant and kicked during his arrest. (*Id.* at 5.) He asserts multiple injuries from the encounter, including "swollen hands[,] twisted

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.
[2] Quotations are written as they appear within the source document, including misspellings. However, some capitalizations have been changed to improve readability.

2

elbows, . . . [and] nerve damage in wrist[,] elbows[,] and shoulders" and asks for relief in the form of an investigation into Defendant Seifert and the "Roxboro judicial system," review of his case, release from detention, and 20 million dollars. (*Id*.)

In May 2023, after summonses were issued to both Defendants and delivered to the RPD's address, but before the docket indicated that they had been returned executed, Defendants filed a joint Motion to Dismiss, along with a supporting memorandum. (Docket Entries 15, 16.) Defendants argue that neither part was properly served and thus the Court lacks personal jurisdiction over both of them. (*See* Docket Entry 16 at 3.)

Plaintiff, in turn, filed multiple responses[3] to the Motion to Dismiss. (Docket Entries 21, 24, 36.) He also filed 19 motions, most of which concern reattempting service on Defendant Seifert, adding claims and defendants, requesting discovery, motions for summary judgment, along with several other miscellaneous motions. (Docket Entries 18, 19, 20, 25, 28, 29, 30, 31, 32, 33, 34, 37, 38, 39, 40, 42, 43, 50, 52.) Defendants filed responses and replies to some, but not all, of Plaintiff's motions, as detailed below. (Docket Entries 35, 44, 51.) All motions are ripe and ready for review.

II. Discussion

**Standard of Review**

Pro se complaints are to be liberally construed. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). "Liberal construction is particularly appropriate when a pro se complaint raises civil rights issues." *Moody-Williams v. LipoScience,* 953 F. Supp. 2d 677, 680 (E.D.N.C. 2013); *see also Brown*

---

[3] Plaintiff also filed various responses and replies to motions that he filed. (*See e.g.,* Docket Entries 47, 48, 51.)

3

v. *N.C. Dept. of Corr.*, 612 F. 3d 720, 722 (4th Cir. 2010). However, even under liberal construction, "generosity is not fantasy," and the court is not expected to plead a plaintiff's claim for him. *Pender v. Suburban Hosp., Inc.,* 159 F.3d 186, 192 (4th Cir. 1998).

1. **Motion to Dismiss and Service-Related Motions**

    a. **Defendant RPD**

In May 2023, Defendants Seifert and RPD filed a joint Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). (Docket Entry 15.) Defendant RPD argues that the Court lacks personal jurisdiction over it because the police department is not an entity that can be sued under North Carolina law. (*See id.* at 6-7.) It further contends that since it is not an entity that can be sued, Plaintiff has failed to state a claim against it to which relief can be granted. (*Id.* at 7.)

"Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity to sue or be sued shall be determined by the law of the state in which the district court is located." *Dash v. Walton,* No. 1:99CV00350, 2000 WL 1229264, at *2 (M.D.N.C. July 17, 2000). "[I]n North Carolina[,]t a municipal agency is not an entity that may be sued." *El-Bey v. City of Thomasville,* No. 1:11CV413, 2012 WL 1077896, at *3 (M.D.N.C. Mar. 30, 2012), *report and recommendation adopted,* No. 1:11CV413, 2013 WL 5461819 (M.D.N.C. Sept. 30, 2013). A police department is considered a municipal agency and thus lacks the capacity to be sued. *See Townsend v. City of Fayetteville,* No. 5:13-CV-195-FL, 2013 WL 2240996, at *1 (E.D.N.C. May 21, 2013); *Wright v. Town of Zebulon,* 202 N.C. App. 540, 543 (2010) ("In North Carolina there is no statute authorizing suit against a police department."); *see also Baker v. Durham Cnty. S.W.A.T. Team,* No. 1:14CV878, 2016 WL 2621972, at *4 (M.D.N.C. May 5, 2016), *report and*

4

*recommendation adopted sub nom. Baker v. Durham S.E.T.,* No. 1:14CV878, 2016 WL 3747615 (M.D.N.C. July 11, 2016). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Ulhorn v. Fletcher,* No. 1:18cv137, 2018 WL 4055267, at *2 (M.D.N.C. Aug. 24, 2018) (citing *Koehler v. Dodwell,* 152 F.3d 304, 306 (4th Cir. 1998)); *see also Chrisp v. Univ. of N. Carolina-Chapel Hill,* 471 F. Supp. 3d 713, 716 (M.D.N.C. 2020).

Here, because the RPD is not an entity that can be sued under North Carolina law, it is not possible for Plaintiff to properly serve it. Accordingly, the Court does not have personal jurisdiction over the RPD, and it should be dismissed from the action.

### b. Defendant Seifert

Defendant Seifert argues that Plaintiff also failed to effectuate service of process on him, and thus the Court lacks personal jurisdiction over him in both his individual and official capacities. (*See* Docket Entry 16 at 3-5.) Regarding service in his individual capacity, Defendant Seifert contends that, under the federal and state rules for service of process, Plaintiff could only serve him at his place of employment by personally delivering the Summons and Complaint to him or by delivering it to an agent whom he had authorized to accept service. (*Id.* at 5.) Instead, Defendant Seifert argues that the RPD records clerk, Brittany Satterfield, accepted service on his behalf, but she did not have his authorization to do so. (*Id.*) As such, he claims service was improper and the 90-day period to serve him has since expired, so the Court does not have personal jurisdiction over him in his individual capacity. (*Id.*)

In accordance with his assertion, Defendant Seifert provided an affidavit that attests he has "not designated anyone at the City of Roxboro Police Department, or at the City of

5

Roxboro, including Brittney Satterfield, to accept service of process on my behalf as an individual." (Docket Entry 15-1 at 1.) Additionally, Ms. Satterfield provided an affidavit that states she "received and signed for the Summons and Complaint directed to James Seifert," even though Defendant "Seifert has not authorized me to accept service or proceed on behalf of him as an individual." (Docket Entry 15-2 at 1.)

"Service of process is governed by Federal Rule of Civil Procedure 4, which provides in part that an individual can be served in a United States judicial district by 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.'" *Midgett v. Cooper,* No. 1:20CV941, 2021 WL 8263543, at *6 (M.D.N.C. Dec. 3, 2021) (internal brackets omitted), *report and recommendation adopted,* No. 1:20-CV-00941, 2022 WL 795762 (M.D.N.C. Mar. 16, 2022) (citing *Lostutter v. Olsen,* No. 1:16CV1098, 2017 WL 3669557, at *4 (M.D.N.C. Aug. 24, 2017)). Under the Federal Rules of Civil Procedure, service of process is effected by "doing any of the following: (a) delivering a copy of the summons and of the complaint to the individual personally; (b) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (c) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1-2). However, "[s]ervice of process cannot be effected upon [a] [d]efendant by serving at his place of employment individuals who are not authorized to accept service of process." *Elkins v. Broome,* 213 F.R.D. 273, 276 (M.D.N.C. 2003).

North Carolina law "in turn provides in relevant part that a natural person can be served 'by [1] depositing with a designated delivery service authorized pursuant to 26 U.S.C. §

6

7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, [2] delivering to the addressee, and [3] obtaining a delivery receipt.'" *Midgett,* No. 1:20CV941, 2021 WL 8263543, at *6 (citation omitted). "[A]lthough a return of service showing service on its face constitutes *prima facie* evidence of service, such showing can be rebutted by the affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant." *Rhodes*, No. 1:20CV42, 2021 WL 826676, at *2.

Here, Ms. Satterfield accepted service on behalf of Defendant Seifert. However, Defendant Seifert had not authorized Ms. Satterfield to receive service on his behalf. Even though the summons was returned executed (Docket Entry 46), Ms. Satterfield's affidavit acknowledging that she was not authorized to accept a summons and complaint addressed to Defendant Seifert demonstrates that Defendant Seifert has not been not properly served.

Further, Defendant Seifert asserts that Plaintiff has failed to effectuate service of process upon him in his official capacity. (*See* Docket Entry 16 at 5-6.) He argues that, because suing a municipal employee in his official capacity is akin to suing the entity employer, the rules for service on the entity should be followed. (*Id.*) Accordingly, he claims that, under Rule 4(j)(5)(a) of the North Carolina Rules of Civil Procedure, process on a city "or other local public bod[y]" must be delivered to the city's "mayor, city manager or clerk." (*See id.* at 5-6 (citing N.C. Gen Stat. 1A-1, Rule 4).) Because the Summons and Complaint were delivered to the RPD and signed for by the RPD's records clerk, he claims was not properly served in his official capacity.

"Suits against governmental officers in their official capacity are treated as suits against the government." *White v. City of Greensboro,* 408 F. Supp. 3d 677, 692 (M.D.N.C. 2019), *vacated*

7

*in part,* 586 F. Supp. 3d 466 (M.D.N.C. 2022). However, "[t]he Federal Rules of Civil Procedure are silent on the method of serving a state officer in her official capacity, and courts differ as to whether such service must comply with the rules governing individual service or those governing service of state agencies." *Walston v. Cintron,* No. 1:18-CV-517, 2018 WL 6624198, at *2 (M.D.N.C. Dec. 18, 2018); *see also Kline v. Cleveland Cnty.,* No. 119CV00197MOCWCM, 2020 WL 2858238, at *2 (W.D.N.C. June 2, 2020) ("By contrast, other courts require the public officer to be personally served, as that officer will be bound by the judgment and can be held in contempt for failing to comply."). Here, the Court need not decide which method of service complies with the rules because, as stated above, service was not properly effectuated on Defendant Seifert in his individual capacity, and the RPD is not an entity that can be sued. Thus, Defendant Seifert has not been properly served in his official capacity.

Nevertheless, because the undersigned construes several of Plaintiff's motions as requests for an extension of time to serve Defendant Seifert, the undersigned will now consider those motions. Ostensibly in response to the Motion to Dismiss, and in an attempt to properly serve Defendant Seifert, Plaintiff has filed several service-related letter motions. (*See* Docket Entries 19, 30, 31, 32, 34, 37.)[4] Taken together, Plaintiff claims that the U.S.

---

[4] These six motions are titled: (1) "Motion To Continue for Marcus Antonio Satterfield" (Docket Entry 19); (2) "Motion for Enlargement of Time" (Docket Entry 30); (3) "Motion for Service of Complaint along with Summons" (Docket Entry 31); (4) "Affidavit of Complaint and Motions to Continue" (Docket Entry 32); (5) "Motion to Amend Complaint to Summons" (Docket Entry 34); and (6) "Motion for Service of Complaint Notice" (Docket Enty 37).

8

Marshals utilized "[i]nproper delevery procedures"[5] (Docket Entry 19 at 1) and requests that service be attempted again. [6] (*See generally* Docket Entries 19, 30, 31, 32, 34, 37.)

Under Rule 4(m), a Plaintiff has 90 days within which to serve defendants absent a showing of good cause. Fed. R. Civ. P. 4(m). It is the plaintiff's burden to prove a defendant was properly served. *See Rhodes v. Talton,* No. 1:20CV42, 2021 WL 826676, at *2 (M.D.N.C. Mar. 4, 2021), *report and recommendation adopted,* No. 1:20CV42, 2021 WL 1381126 (M.D.N.C. Apr. 12, 2021); Fed. R. Civ P. 4(l). However, "[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Allen v. Elwell,* No. 1:19CV766, 2022 WL 16635378, at *7 (M.D.N.C. Nov. 2, 2022), *report and recommendation adopted,* No. 1:19CV766, 2022 WL 20111395 (M.D.N.C. Dec. 5, 2022) (citing *Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 876 (D.C. Cir. 1993)). "While mere technicalities ordinarily should not stand in the way of finding proper service and courts will liberally

---

[5] Plaintiff does not explain why believes the Marshals did not properly deliver the Summons and Complaint. However, it is the duty of the plaintiff to provide correct addresses for defendants. (*See* Docket Entry 4 ("Plaintiff must fill out a summons or each defendant, including an address suitable for service . . . . Failure to provide an address wherein service may be made on any defendant will result in the dismissal of the action . . . .").)

[6] In his first motion for extension of time for service (Docket Entry 19), Plaintiff also seems to request that the Court appoint legal counsel for Plaintiff. (*See id.* at 1 ("I also file and advance motion to secure my legal civil complaints by again asking the courts for legal representation of these lawsuits.").) A litigant has no right to appointed counsel in a 42 U.S.C. § 1983 suit. *Alexander v. Parks*, 834 F. App'x 778, 782 (4th Cir. 2020). The court may appoint counsel in civil cases only when exceptional circumstances exist. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). "Whether the circumstances are exceptional depends on the type and complexity of the case, and the abilities of the individuals bringing it." *Lowery v. Bennett*, 492 F. App'x 405, 411 (4th Cir. 2012) (internal quotations and citation omitted). "If it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978). Here, Plaintiff has not demonstrated that this is an exceptional case warranting appointment of counsel at this juncture. Plaintiff's claims are not complex, and Plaintiff's submissions thus far show that he is capable of representing himself in this matter. Thus, to the extent that Plaintiff's motion could be construed as seeking appointment of counsel, such a request is denied.

construe the rules when actual notice occurs, 'the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.'" *Chrisp,* 471 F. Supp. 3d at 716 (citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.,* 733 F.2d 1087, 1089 (4th Cir. 1984)).

Plaintiff filed his Complaint on February 9, 2023, at which point the 90-day period to serve Defendants began to run. On March 21, 2023, well within the 90-day period, a Summons and Complaint was issued to Defendant Seifert. (Docket Entry 5.) In response, Defendant Seifert filed a motion for extension of time to file an answer in April 2023, indicating that he had actual notice of the suit at this point. (*See* Docket Entry 10.) Then, in May 2023, soon after the expiration of the 90-day period, Defendants filed the joint motion to dismiss alleging insufficient service of process.[7] (*See* Docket Entry 15.)

While Defendant Seifert was not properly served, Plaintiff would not have had knowledge that there were any service-related issues until Defendants filed their motion to dismiss, which was after the 90-day period for service had expired. Within a few weeks of receiving Defendants' motion to dismiss, Plaintiff began to file motions asking the Court for extensions of time to reattempt service on Defendant Seifert. In fact, from May 2023 through July 2023, Plaintiff filed six motions asking for help with service. (*See* Docket Entries 19, 30, 31, 32, 34, 37.) Plaintiff has clearly evidenced his diligence in attempting to correct any service-related issues regarding Defendant Seifert. Given that plaintiff is a pro se inmate afforded more latitude to correct service issues, that he attempted to correct service shortly after

---

[7] The docket was not updated to note that Defendant Seifert's Summons was returned executed until late July 2023, at which time the 90-day period to serve a defendant had long expired.

10

Case 1:23-cv-00143-WO-JLW   Document 55   Filed 02/16/24   Page 10 of 20

learning there might be an issue, that Defendant Seifert had actual notice of the suit, and that Defendant Seifert will not be significantly prejudiced by a liberal construction of Rule 4(m), the undersigned finds good cause to grant Plaintiff an extension of time to serve Defendant Seifert. *See Rhodes v. Talton,* No. 1:20CV42, 2021 WL 826676, at *3 (M.D.N.C. Mar. 4, 2021), *report and recommendation adopted,* No. 1:20CV42, 2021 WL 1381126 (M.D.N.C. Apr. 12, 2021) (finding that Defendants would not be prejudiced by allowing Plaintiff another chance to perfect service). Dismissal for service-related insufficiencies regarding Defendant Seifert, therefore, is inappropriate. Rather, the Court, in exercising its discretion, should allow Plaintiff an opportunity to perfect service. Thus, the undersigned recommends that the Motion to Dismiss (Docket Entry 15) be granted in part as to Defendant RPD and denied in part as to Defendant Seifert. Additionally, the undersigned recommends that Defendant RPD be dismissed from the action.

**Plaintiff's Remaining Motions**

1. **Motions to Amend**

Plaintiff has filed two letter motions that the undersigned liberally construes to be Motions to Amend his Complaint.[8] (*See* Docket Entries 42, 52.) First, Plaintiff requests to add a failure to train claim against Defendant RPD. (*See* Docket Entry 42.) Defendants respond that the motion requesting to add a failure to train claim against the RPD is futile because the RPD is not an entity that can be sued. (*See* Docket Entry 48 at 2.)

---

[8] These two motions to amend are titled: (1) "Plaintiffs Motion To Amend Complaint of Failure to Train Officers by Roxboro Police Department" (Docket Entry 42); and (2) "Plaintiffs Motion to Add Defendant Chief of Police David Hess and Amend complaint to Original Complaint against Defendants" (Docket Entry 52).

Under Rule 15, a plaintiff is allowed to amend a complaint once as a matter of right. Fed. R. Civ. P. 15(a)(1); *see also Deal v. Chung,* No. 1:13-CV-1033, 2014 WL 3487816, at *1 (M.D.N.C. July 11, 2014) ("Plaintiff is entitled under Federal Rule of Civil Procedure 15(a)(1) to amend his Complaint one time even without Court permission."). However, because Plaintiff proceeds IFP under 28 U.S.C. § 1915A, the Court is required to "dismiss the complaint, or any portion of the complaint, if [it] is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b); *see also Deal,* No. 1:13-CV-1033, 2014 WL 3487816, at *1. A frivolous complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *see also Nagy v. Federal Med. Ctr. Butner,* 376 F.3d 252, 256-57 (4th Cir. 2004) ("The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." (some internal quotation marks omitted)). Here, as discussed earlier, the undersigned has determined that the RPD is not a legal entity that can be sued, thus Plaintiff's attempt to add a failure to train claim against the RPD does not have an arguable basis in fact or law and therefore is frivolous.

Plaintiff further requests to add Roxboro Chief of Police David Hess in his official capacity for failing to train Defendant Seifert. (Docket Entry 52.) Defendants assert that adding Chief Hess as a defendant would be futile because Plaintiff fails to state a plausible claim against Chief Hess. (*See* Docket Entry 53 at 2-3.)

Under 28 U.S.C. § 1915A, a complaint or an amendment to a complaint "fails to state a claim upon which relief may be granted" when it does not "contain sufficient factual matter,

12

Case 1:23-cv-00143-WO-JLW   Document 55   Filed 02/16/24   Page 12 of 20

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

To bring a claim based upon failure to train, "[a] plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens v. Baltimore City State's Att'ys Off.,* 767 F.3d 379, 402 (4th Cir. 2014) (internal quotations omitted). Thus, there must be allegations of "continued inaction in the face of documented widespread abuses," *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994), such as through "the existence of reported and unreported cases and numerous successful motions which, if true, would buttress [an] legal conclusion." *Owens,* 767 F.3d at 403; *see also Rodgers,* No. 1:22CV518, 2023 WL 8021513, at *5.

Here, Plaintiff's attempt to add Chief Hess fails because Plaintiff has not alleged sufficient facts to bring a failure to train claim against him. He alleges no official "widespread practice," or that Chief Hess had any "actual or constructive knowledge" of Defendant

13

Seifert's actions, nor does he allege any facts that might implicate Chief Hess's "deliberate indifference." Instead, Plaintiff merely asserts in a conclusory manner that Chief Hess failed to train Defendant Seifert and reiterates his claims against Defendant Seifert. Accordingly, the undersigned recommends denying Plaintiff's motions to amend. (Docket Entries 42, 52.)

### 2. Discovery Motions

Plaintiff has filed three discovery-related motions.[9] (See Docket Entries 25, 28, 43.) Within these motions, Plaintiff "requests paper from the Person County Detention Center, files from Person Memorial Hospital and such records of arrest[,] transcripts of call log[,] and officers on scene arrivials along with the findings from the Durham neve specialliest," (Docket Entry 25), along with "all data, reports[,] and video that was taken on the day" of his arrest. (Docket Entry 28.) Further, he requests that Defendants "answer fully the accusations made against them[,] to produce arrest warrant, police report, incident investigation report, event log, the security footage from the Person County Sherriffs Detention Center front entrance and hallway cameras" and also attaches "Questions to Be answered [by] Officer James F. Seifert." (Docket Entry 42 at 1-2.) Defendants filed two responses, which contend that any requests for discovery are premature under Rule 26 and Local Rule 16, overly broad, and improper because the requested items are not in Defendants' possession. (*See* Docket Entries 41 at 2-4, 47 at 1-2.)

Under Local Rule 16.1(a)(6), "discovery shall not commence until entry of the scheduling order." M.D.N.C. LR 16.1(a); *see also Turner v. Johnson,* No. 1:22CV92, 2022 WL

---

[9] These motions are titled: (1) "Motions to Amend Complaints and Motions for Summary Judgments" (Docket Entry 25); (2) "Plaintiffs' Motion for Evidence and to Enclude Evidence" (Docket Entry 28); and (3) "Motion For An Order Compelling Discovery" (Docket Entry 43).

14

17067592, at *2 (M.D.N.C. Nov. 17, 2022), *report and recommendation adopted,* No. 1:22-CV-92, 2022 WL 17607033 (M.D.N.C. Dec. 13, 2022). No scheduling order has been entered in this case because there is still a pending motion to dismiss. *See e.g., Arroyo v. Merriweather,* No. 320CV00506FDWDSC, 2021 WL 1404560, at *5 (W.D.N.C. Apr. 14, 2021) (noting that a "motion regarding discovery is premature as there are motions to dismiss still pending"). Therefore, because all discovery-related motions are premature at this stage in litigation, the undersigned recommends denying Plaintiff's motions. (Docket Entries 25, 28, 43, 50.)

3. **Summary Judgment Motions**

Next, Plaintiff has filed three summary judgment motions.[10] (*See* Docket Entries 18, 38, 39.) Plaintiff requests "that [his] case be heard before the courts. I'm requesting this trial motion and for summary judgement." (Docket Entry 38 at 1.) He further seems to attempt to order that "all concerns of dismissal grounds shall be answered" and "no further delayed tactics shall be permitted." (Docket Entry 39.)

Defendants respond that Plaintiff's requests for summary judgment are insufficient because they "fail to present evidence or support [his] assertions with citations to particular parts of the record." (Docket Entry 44 at 6.) They further argue that the motions are premature. (*Id.* at 7.) Defendants have also filed a Rule 56(d) affidavit, explaining that, given

---

[10] Plaintiff's first summary judgment motion is a letter motion addressed to the Court asking for summary judgment based on "false arrest or abuse of authority made by the police department employee." (*See* Docket Entry 18.) The remaining two summary judgment motions are titled: (1) "Request Motion for Trial" (Docket Entry 38); and (2) "Plaintiffs Motion for Response of Summary Judgement Motion" (Docket Entry 39). Additionally, Plaintiff also mentions the term "Summary Judgment" in other motions. (*See e.g.,* Docket Entry 50 at 4.) While the undersigned liberally construes these motions as being related to other matters, even if these motions were requests for summary judgment, they would similarly be denied as premature.

15

the current stage of litigation, Defendants would be "severely prejudiced by having to defend against a Motion for Summary Judgment." (Posey Aff. 44-1 at 3.)

"As a general rule, granting summary judgment before the completion of all discovery is inappropriate." *Ada Liss Grp. (2003) Ltd v. Sara Lee Corp.*, No. 1:06-CV-00610, 2010 WL 11541924, at *2 (M.D.N.C. Nov. 16, 2010). "Thus, generally speaking, summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Wong v. Guilford Cnty. Sheriff Dep't*, No. 1:23CV223, 2024 WL 85548, at *4 (M.D.N.C. Jan. 8, 2024) (internal quotations and bracket omitted). Additionally, "Rule 56(d) provides that a court defer ruling on a motion for summary judgment or deny the motion outright if the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Huggins v. Roach*, No. 5:15-CT-3002-BO, 2016 WL 5106984, at *5 (E.D.N.C. Sept. 19, 2016), aff'd, 678 F. App'x 153 (4th Cir. 2017); Fed. R. Civ. P. 56 (d).

At this stage in the litigation, Plaintiff's requests for summary judgment are premature. Given the prematurity of the motions, and that Defendants have filed a 56(d) affidavit explaining that they would be prejudiced by having to defend against a motion for summary judgment at this juncture, the undersigned recommends denying Plaintiff's summary judgment-related motions. (Docket Entries 18, 38, 39.)

**4. Motion for a More Definite Statement**

Plaintiff filed a "motion for More definite statement of Allegations contained In Complaint." (Docket Entry 40.) Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or

16

Case 1:23-cv-00143-WO-JLW   Document 55   Filed 02/16/24   Page 16 of 20

ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P 12(e). It is unclear what relief Plaintiff requests in his motion. Since he filed the Complaint, it seems illogical that he would ask Defendants for clarification of his own Complaint, as the title of his motion suggests. Further, the content of the motion does not provide additional clarity. Therefore, the undersigned liberally construes his motion as a request to clarify the issues presented in Defendant's Motion to Dismiss. However, "a motion to dismiss is not a pleading." *Gordon v. Phillip,* No. 1:21CV29, 2021 WL 3931895, at *1 (M.D.N.C. Sept. 2, 2021). Instead, "[t]o survive a Rule 12(e) motion, 'a pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss." *Burgess v. Mylan Pharms., Inc.,* No. 322CV00658FDWSCR, 2023 WL 6131634, at *3 (W.D.N.C. Sept. 19, 2023). As such, the motion is improper because Defendant's Motion to Dismiss is not a pleading to which a responsive pleading is allowed. Additionally, Defendants' Motion to Dismiss is neither vague nor ambiguous. Therefore, the undersigned recommends denying Plaintiff's Motion for a More Definite Statement. (Docket Entry 40.)

5. **Remaining Motions**

Finally, Plaintiff has four remaining motions that do not necessarily fit within the requirements of the Federal Rules of Civil Procedure.[11] (Docket Entries 20, 29, 33, 50.) First, Plaintiff filed a letter motion titled "Motion to Amend Complaint To: City of Roxboro." (Docket Entry 20.) The letter, in total, states,

---

[11] The four motions are titled (1) "Motion to Amend To: City of Roxboro" (Docket Entry 20); (2) "Motion to Continue This Proceeded Case." (Docket Entry 29); (3) "Motion to Continue and Challenge Jurisdiction Claim" (Docket Entry 33); and (4) "Motion To Amend Complaint of failure To Train Properley" (Docket Entry 50).

17

> In these findings against Officer J.R. Seifert and Department I ask for a motion to amend complaint to proceed as followed against J.P. Seifert on the ground of illegal arrest assault and failure to process after arrest Today is May 24-2023. I Marcus Antonio also would suggest that my motions be accepted as legal statues instead of just a letter.

(Docket Entry 20 at 1.)

Rule 7 dictates that motions must "state with particularly the grounds for seeking the order; and state the relief sought." Fed. R. Civ P. 7(b)(1)(B)-(C). Here, the undersigned is unsure the grounds for which Plaintiff is seeking an order or what relief he is requesting. To the extent that he is attempting to amend his Complaint to include claims for "illegal arrest, assault and failure to process after arrest," there is no need to do so because those claims have already been alleged in his Complaint. (*See* Docket Entry 2 at 3-4 (Among other claims, Plaintiff alleges "illegal arrest, failure to properly go by legal procedures" and "physical abuse.").) To the extent that Plaintiff is requesting to proceed with the case, litigation is proceeding as required under the law. Thus, because Plaintiff has not stated with particularity the grounds for seeking an order or what relief he seeks from the Court, the undersigned recommends denying the motion. (Docket Entry 20.)

Next, Plaintiff filed a document titled "Motion to Continue This Proceeded Case." (Docket Entry 29). While the title references a motion to continue, the content of the motion appears to be a response to Defendants' Motion to Dismiss (Docket Entry 15). In it, Plaintiff reiterates his claims and states that Defendants "lack[ed] immunity." (Docket Entry 29 at 1.) He does not request any specific relief. Therefore, the undersigned recommends denying Plaintiff's "Motion to Continue This Proceeded Case." (Docket Entry 29.)

18

Next, Plaintiff filed a motion titled "Motion to Continue and Challenge Jurisdiction Clak or lack there of." (Docket Entry 33.) Within this document, he declares that he "did in fact explore all remides to my situation" and "[t]hese "jurisdiction matters seem[] to be a stall tactic." (Id. at 1.) He further "asks the Court to note that every person I've grieved to and wrote my complaints to ignored truth of laws." (Id.) Even under liberal construction, Plaintiff does not state any grounds for an order or request relief that the Court can grant. Therefore, the undersigned recommends dismissal of Plaintiff's motion.[12] (Docket Entry 33.)

Docket Entry 50 is titled "Motion to Amend Complaint of failure To Train Properley." In it, Plaintiff does not move the Court to perform any action, but instead makes generalized statements regarding police officers who do not "read a person rights" and "refuse to actually obtain warrants when warrants are necessary." (Docket Entry 50 at 1.) He also attaches what appears to be a letter addressed to the "Clerks Office" that again explains the problems with service on Defendant Seifert. (*Id.* at 2-4.) Because Plaintiff does not state the grounds for relief with particularity or clearly request any relief, the undersigned recommends denying "Motion to Amend Complaint of failure to Train Properley." (Docket Entry 50.)

III. Conclusion

**IT IS THEREFORE RECOMMENDED** that the Motion to Dismiss (Docket Entry 15) filed by Defendants Seifert and the Roxboro Police Department be **GRANTED**

---

[12] Generally, Plaintiff's motions are unfocused and rambling. To the extent that Plaintiff requests relief not specifically mentioned above, such requests are denied under Rule 7 for failing to "state with particularly the grounds for seeking the order; and state the relief sought." Fed. R. Civ. P. 7(b)(1)(B).

**IN PART, DENIED IN PART**. Accordingly, the undersigned **RECOMMENDS DISMISSING** Defendant Roxboro Police Department from the action.

Additionally, the undersigned **RECOMMENDS** that Plaintiff's motions to amend (Docket Entries 42, 52) be **DENIED**; Plaintiff's discovery motions (Docket Entries 25, 28, 43) be **DENIED**; Plaintiff's summary judgment motions (Docket Entries 18, 38, 39) be **DENIED**; Plaintiff's "Motion for More definite Statement of Allegations contained In Complaint" (Docket Entry 40) be **DENIED**; and Plaintiff's indeterminate motions (Docket Entries 20, 29, 33, 50) be **DENIED**.

Further, the undersigned **RECOMMENDS** that Plaintiff's motions for extensions of time to serve Defendant Seifert (Docket Entries 19, 30, 31, 32, 34, 37) be **GRANTED** to the extent that Plaintiff may attempt to serve Defendant Seifert at the Person County Sheriff's Department. Accordingly, if the recommendation is adopted, the Court directs the Clerk to issue the Summons (Docket Entry 32-1) and Complaint (Docket Entry 2) to Defendant Seifert at the Person County Sheriff's Department. The Clerk shall give the summons and Complaint to the United States Marshal for service of process.[13]

                        /s/ Joe L. Webster
                        United States Magistrate Judge

February 16, 2024
Durham, NC

---

[13] The undersigned acknowledges the difficulties, given Plaintiff's pro se prisoner status, that he may still encounter with serving Defendant Seifert. Perhaps Defendant Seifert may agree to waive service at Plaintiff's request or authorize Defendant's attorney to accept service on his behalf, although he is under no obligation to do so.